MZ2020CV01236 17/12/2020 03:13:15 p.m. Página 1 de 2

MZ2020CV01236 10/12/2020 05:15:27 am Entrada Núm. 2 Página 1 de 2



**ESTADO LIBRE ASOCIADO DE PUERTO RICO**
**TRIBUNAL GENERAL DE JUSTICIA**
**TRIBUNAL DE PRIMERA INSTANCIA**
**SALA SUPERIOR DE MAYAGÜEZ**

| | |
|---|---|
| JOANNE CECILIA RODRIGUEZ DE JESUS<br>**Parte Demandante**<br><br>v.<br><br>XJTT HOSPITALITY, INC.,<br>**Parte Demandada** | **CASO NÚM. MZ2020CV01236**<br><br>SOBRE: PETICIÓN DE ORDEN |

## EMPLAZAMIENTO

ESTADOS UNIDOS DE AMERICA, SS
EL PRESIDENTE DE LOS ESTADOS UNIDOS
EL ESTADO LIBRE ASOCIADO DE PUERTO RICO

**A: XJTT HOSPITALITY, INC.,**
DESCONOCIDA CABO ROJO, PUERTO RICO

POR LA PRESENTE se le emplaza para que presente al tribunal su alegación responsiva dentro de los 30 días de haber sido diligenciado este emplazamiento, excluyéndose el día del diligenciamiento. Usted deberá presentar su alegación responsiva a través del Sistema Unificado de Manejo y Administración de Casos (SUMAC), al cual puede acceder utilizando la siguiente dirección electrónica: https://unired.ramajudicial.pr, salvo que se represente por derecho propio, en cuyo caso deberá presentar su alegación responsiva en la secretaría del tribunal. Si usted deja de presentar su alegación responsiva dentro del referido término, el tribunal podrá dictar sentencia en rebeldía en su contra y conceder el remedio solicitado en la demanda, o cualquier otro, si el tribunal, en el ejercicio de su sana discreción, lo entiende procedente.

Nombre del Abogado: JOSÉ CARLOS VÉLEZ COLÓN
RUA: 18913
Dirección: 421 AVE MUNOZ RIVERA, APT 205, SAN JUAN, PUERTO RICO, 00918-4015
Tel: 7875999003 / Fax:
Correo Electrónico: JVELEZ@VELEZLAWGROUP.COM

Expedido bajo mi firma y sello del Tribunal, el _____ de DEC. 1 7 2020 de _____ .

LIC. NORMA G. SANTANA IRIZARRY
SECRETARIA REGIONAL II
Nombre del (de la)
Secretario(a) Regional

Por: _____ Ramona Barbot Pérez
Nombre y Firma del (de la)
Secretario(a) Auxiliar del Tribunal

OAT 1721 Emplazamiento (SUMAC)
(Rev. Mayo 2018)
Reglas de Procedimiento Civil de 2009, según enmendadas

1022

Página 1 de 2

MZ2020CV01236 17/12/2020 03:13:15 p.m. Página 2 de 2

MZ2020CV01236 10/12/2020 05:15:27 am Entrada Núm. 2 Página 2 de 2

Caso Núm. **MZ2020CV01236**

## CERTIFICADO DE DILIGENCIAMIENTO POR EL (LA) ALGUACIL

Yo _____ Alguacil del Tribunal de Primera Instancia de Puerto Rico, Sala de _____ .

CERTIFICO que el diligenciamiento del emplazamiento y de la demanda del caso de referencia fue realizada por mí, el _____ de _____ de _____, a las _____ ☐ am ☐ pm, de la siguiente forma:

☐ Mediante entrega personal a la parte demandada en la siguiente dirección física: _____

☐ Accesible en la inmediata presencia de la parte demandada en siguiente dirección física: _____

☐ Dejando copia de los documentos a un(a) agente autorizado(a) por la parte demandada o designada por ley para recibir emplazamientos en la siguiente dirección física: _____

☐ No se pudo diligenciar el emplazamiento personalmente debido a que: _____

En _____ , Puerto Rico, el _____ de _____ de _____ .

_____
Nombre del (de la) Alguacil Regional

_____
Nombre del (de la) Alguacil de Primera Instancia y Número de Placa

_____
Firma del (de la) Alguacil de Primera Instancia

## DILIGENCIAMIENTO DEL EMPLAZAMIENTO POR PERSONA PARTICULAR

Yo, Rene Negron Negron , declaro tener capacidad legal conforme la Regla 4.3 de Procedimiento Civil de Puerto Rico, y certifico que el diligenciamiento del emplazamiento y de la demanda del caso de referencia fue realizado por mí, el 26 de diciembre de 2020, de la siguiente forma:

☑ Mediante entrega personal a la parte demandada en la siguiente dirección física: a XTTT Hospitality, Inc. a través de Nileika Chevena, recepcionista autorizada por Xavier Ramirez, tesorero de la corporacion

☐ Accesible en la inmediata presencia de la parte demandada en siguiente dirección física:

☑ Dejando copia de los documentos a un(a) agente autorizado(a) por la parte demandada o designada por ley para recibir emplazamientos en la siguiente dirección física: a traves del telefono, en Combate Beach Resort Carretera 3301, Kilometro 2, Hectometro 7 interior, Sector El Combate

☐ No se pudo diligenciar el emplazamiento personalmente debido a que: Cabo Rojo, Puerto Rico

Cabo Rojo Puerto Rico

## COSTOS DEL DILIGENCIAMIENTO

$ _____

## DECLARACIÓN DEL (DE LA) EMPLAZADOR(A)

Declaro bajo pena de perjurio, conforme a las leyes del Estado Libre Asociado de Puerto Rico, que la información provista en el diligenciamiento del emplazamiento es verdadera y correcta.

Y PARA QUE ASÍ CONSTE, suscribo la presente en Cabo Rojo , Puerto Rico, el 26 de diciembre de 2020.

_____
Firma del (de la) emplazador(a)

Carretera 307 Km 8 Hm 1 PR P.O. Box 1124 Boqueron PR 00622
Dirección del (de la) emplazador(a)
(787) 638-9800

AFFIDÁVIT NÚM. _____ [en caso de ser juramentado ante un(a) notario(a)]

Jurado(a) y suscrito(a) ante mí por _____ , de las circunstancias personales anteriormente mencionadas, a quien doy fe de conocer _____

(conocimiento personal o, en su defecto, la acreditación del medio supletorio provisto por la Ley Notarial)

En _____ , Puerto Rico, el _____ de _____ de _____ .

_____
Nombre del (de la) Notario(a) o Secretario(a) Regional

Por: _____

_____
Nombre y Firma del (de la) Secretario(a) Auxiliar del Tribunal

*(handwritten notes in margin: Combate Beach Resort)*

MZ2020CV01236 10/12/2020 05:09:37 am Entrada Núm. 1 Página 1 de 30

**ESTADO LIBRE ASOCIADO DE PUERTO RICO**
**TRIBUNAL DE PRIMERA INSTANCIA**
**SALA SUPERIOR DE MAYAGUEZ**

| | |
|---|---|
| **JOANNE CECILIA RODRIGUEZ DE JESUS** | **CIVIL NÚM:** |
| **Parte Peticionaria** | |
| **v.** | **SOBRE:** |
| **XJTT HOSPITALITY, INC.** | **INTERDICTO ESTATUTARIO** **42 U.S.C. § 12188** |
| **Parte Peticionada** | |

**PETICIÓN DE ORDEN DE INTERDICTO PERMANENTE**
*(No se incluye solicitud de Interdicto Preliminar)*

**AL HONORABLE TRIBUNAL:**

Comparece la parte peticionaria Joanne Cecilia Rodríguez De Jesús (en adelante, "Parte Peticionaria"), a través de la representación legal que suscribe, y solicita un interdicto permanente al amparo de 42 U.S.C. § 12188 debido al incumplimiento de XJTT Hospitality, Inc., registro núm. 185150 (en adelante, "Parte Peticionada con las disposiciones del Título III de la ley federal conocida como American with Disabilities Act, 42 U.S.C. § 12181 et seq. (en adelante nos referimos al estatuto federal como "Ley ADA").[1]

## EL LUGAR DE ACOMÓMO PÚBLICO EN CUESTIÓN

1.      Esta es una acción que busca remediar la discriminación ilegal en un lugar de **acomodo público**[2] establecido y conocido en el lugar que se menciona a continuación:

---

[1] El Título III de la Ley ADA obliga a todas las entidades privadas y facilidades comerciales que brindan servicios al público. La obligación impuesta por el Título III consiste en no discriminar en el ofrecimiento de dichos servicios hacia las personas con impedimentos en el disfrute igual y pleno de los bienes, servicios y facilidades, privilegios, ventajas o acomodos en cualquier lugar de acomodo público. El enlace oficial del gobierno de los Estados Unidos con información sobre Titulo II/III de Ley ADA es: http://www.ada.gov/

[2] El término "public accommodation" o lugar de acomodo público, 42 U.S.C. 12181(7), se define como entidades privadas cuyas operaciones afectan el comercio y específicamente se mencionan los siguientes lugares a modo de ejemplificar lo que es un lugar de acomodo público: hoteles, moteles, hospederías, restaurantes, barras, otros establecimientos que sirvan comida o bebidas,

XJTT Hospitality, Inc.,  d/b/a Parador Combate Beach
Catastro: 402-067-060-04-000
Parcela: 402-067-060-04
Procedencia: 402-067-060-04
Dirección física:
SOLAR 7 URB EXTENSION EL COMBATE, CABO ROJO
Coordenadas: 17.977470795253616, -67.21101576221135

(en adelante, nos referiremos a este lugar como "la Propiedad" o el "lugar de acomodo público").

## NECESIDAD DE LA ACCION

2.     Esta Petición de interdicto permanente es necesaria por lo siguiente:

a) La Parte Peticionada ignoró múltiples comunicaciones dirigidas a establecer un dialogo extrajudicial para atender los problemas de barreras arquitectónicas en la Propiedad.

b) La Parte Peticionada no procuró la eliminación de barreras arquitectónicas;

c) La Parte Peticionada mantiene en el lugar de acomodo público barreras arquitectónicas en violación de la ADA y a las Guías de Diseño Accesible promulgadas por el Departamento de Justicia de los Estados Unidos, las cuales puede ser accedidas a través del siguiente enlace oficial: https://www.ada.gov/2010ADAstandards_index.htm

d) La Parte Peticionaria visitó el lugar de acomodo público y allí encontró personalmente barreras arquitectónicas que se relacionan con su discapacidad;

---

cines, teatros, salas de conciertos y presentaciones, estadios, lugares para exhibiciones o entretenimiento, auditorios, centros de convenciones, salas de presentaciones, lugares de congregación, panaderías, tienda de comestibles, tiendas de ropa, tiendas de herramientas, centros comerciales, otros establecimientos de ventas o renta, lugares de lavado ("laundromat"), secado (dry-cleaning), bancos, barberías, salones de belleza, agencias de viaje, servicios de reparación de zapatos, funerarias, estaciones de gasolina, oficina de un contable o abogado, farmacias, oficinas de seguros, oficina de profesionales de la salud, hospitales, otros establecimiento de servicios, un terminal o estación utilizado para transportación pública, museos, librerías, galerías, otros lugares donde haya exhibiciones públicas o colecciones, parques, zoológicos, parques de diversión y otros lugares de recreación, centro de cuido de infantes ("nursery"), escuelas elementales, secundarias, universidades, o escuelas post-graduadas privadas o cualquier otro lugar se provea educación, centro de cuido de niños, centro de cuido de "seniors", refugios de personas sin hogar, lugares donde se da comida, agencias de adopción, o cualquier otro establecimiento donde se dan servicios sociales, gimnasios, spas de salud, boleras, lugares de golf y otros lugares de ejercicio y recreación.

2

e) La Parte Peticionaria se (i) encuentra en inminente riesgo de encontrar las barreras arquitectónicas o (ii) sería fútil regresar al lugar de acomodo público en este momento ya que constituiría un riesgo a la seguridad personal de la Parte Peticionaria o equivaldría a someterse a una condición o situación desagradable, humillante y discriminatoria;

f) La parte peticionaria tiene la intención presente de poder disfrutar los bienes, privilegios, servicios que están disponibles en el lugar de acomodo público una vez las barreras arquitectónicas sean removidas en su totalidad. Sin embargo, la Parte Peticionaria se reserva el derecho de regresar al lugar de acomodo público en cualquier momento antes de que se remuevan las barreras arquitectónicas, aunque ello represente someterse a condiciones peligrosas o discriminatorias, con el fin de buscar, identificar y denunciar el discrimen.

## LA PARTE PETICIONARIA

3.   La Parte Peticionaria es una persona que sufre de una discapacidad física o mental que limita sustancialmente varias de sus actividades cotidianas principales. La discapacidad física es: osteoartritis, área cervical afectada, problemas de discos en la espalda, operación de rodilla.  Estas y otras condiciones han sido acreditadas a través de los médicos Fondo del Seguro del Estado. La parte peticionaria tiene un rotulo especial de impedido expedido por el Departamento de Transportación y Obras públicas, rotulo número 2207852. Dichas condiciones limitan a la Parte Peticionaria (sustancialmente, en comparación con la mayoría de la población) las siguientes actividades de la Parte Peticionaria: caminar, mantenerse de pie, mantener balance levantarse, inclinarse, entre otros problemas de movilidad. Al hacer estas actividades, la Parte Peticionaria tiende a sentir más dolor y hacer más esfuerzo que la persona promedio de la población general. Su dirección física es: Calle Del Parque #78, Bo. Jacaguas, Juana Díaz, PR 00795.Su dirección postal es:  HC-03 BOX 11115, Juana Díaz, PR 00795. Su número de teléfono es: (787) 462-9548. Fax: No tiene.

4.      La parte Peticionaria tiene un "disability", según definido por la Ley ADA. 42 U.S.C. § 12102(1)(A).

5.      El Departamento de Transportación y Obras Gobierno de Puerto Rico (DTOP) ha expedido para beneficio de la Parte Peticionaria un rótulo removible de personas con impedimento físico, de modo que la Parte Peticionaria pueda utilizar el rótulo para estacionarse en estacionamientos identificados como accesibles o "de impedido".  El rótulo removible no tiene que ser utilizado en un vehículo especifico ni tiene que ser utilizado en un vehículo de motor inscrito a favor de la parte Peticionaria. La Parte Peticionaria tiene derecho a utilizar el rótulo removible expedido por DTOP en cualquier vehículo, ya sea uno propio, un familiar, un amigo o un vehículo que haya abordado de manera incidental. La Parte Peticionaria tiene derecho legal a utilizar estacionamientos designados como accesibles o "de impedidos" en esta jurisdicción sin importar el vehículo de motor en el que se encuentre abordo.

## LA PARTE PETICIONADA

6.      La Parte Peticionada está integrada por las siguientes personas naturales o jurídicas:

> i.      XJTT Hospitality, Inc. Esta persona jurídica es titular, arrendadora, arrendataria u operadora de la Propiedad que  se identifica en el primer parrafo de este documento.

> ii.     Fulanos de Tal 1-100. Estas personas naturales o jurídicas desconocidas son titulares, arrendadores, arrendatarios y operadores del la Propiedad que se identifica en el primer parrado de este documento. Ya que la identidad de estos se desconoce en estos momentos, se enmendará la Petición a los fines de acumularlos a este procedimiento civil. En esta Petición, el término "Parte Peticionaria" incluye también a todos los peticionados desconocidos identificados con el nombre ficticio "Fulano de Tal 1-100".

## JURISDICCIÓN Y COMPETENCIA

4

9.     De este procedimiento civil ser removido al Tribunal de Distrito de los Estados Unidos, se invocada jurisdicción sobre la materia de conformidad con 28 U.S.C. §§ 1331 y 1343 (a)(3) y (a)(4) por violaciones de la ADA.

10.     El Tribunal de Primera Instancia tiene jurisdicción original para dilucidar controversias que surgen al amparo del Título III de la American with Disabilities Act, 42 U.S.C. § 12181 et seq.

11.     Esta acción civil ha sido presentada ante el foro judicial que ostenta la competencia toda vez que la Propiedad en controversia está ubicada en esta región judicial.

## HECHOS

12.     La Propiedad es un lugar de acomodo público según definido por la Ley ADA, 42 U.S.C. 12181(7) y es un lugar abierto al público y cuya operación afecta el comercio. La Propiedad no es residencial, no es un club privado ni es una iglesia.

13.     La Parte Peticionaria es residente de Puerto Rico y vive muy cerca la Propiedad en vehículo de motor.

14.     La parte peticionaria ha visitado la Propiedad motivada por cupones de descuento que obtuvo a través de ofertadeldia.com. Luego de visitar la Propiedad, la parte Peticionaria tuvo que irse porque no habían habitaciones accesibles y los acomodos alternos que le ofrecieron eran irrazonables. Además, era irrazonable someterse a un sinnúmero de barreras arquitectónicas en violación de la reglamentación aplicable, según se discute más adelante.

15.     Durante su visita a la Propiedad, la Parte Peticionaria pudo relacionarse con la configuración física del hotel a base de sus observaciones personales.  También tiene conocimiento de la configuración física del hotel a través de los medios de comunicación e información disponible en internet, como, por ejemplo:

     i.     https://combatebeach.com/all-rooms/

     ii.     https://www.metro.pr/pr/noticias/2018/05/16/combate-beach-resort-anade-habitaciones-inventario.html

iii.   https://www.elnuevodia.com/negocios/empresas-

comercios/notas/combate-beach-resort-anadira-doce-habitaciones-para-

el-ano-que-viene/

iv.   https://www.elvocero.com/economia/combate-beach-resort-mantiene-

crecimiento-en-octavo-aniversario/article_f17f4a4e-0aa1-11e9-be38-

979314b3922f.html

v.   https://www.elvocero.com/economia/instan-a-eliminar-la-competencia-

desleal/article_bca87594-0cf1-11eb-9afd-875ff5cce7d9.html

vi.   https://g.page/CombateBeach?share

vii.   https://www.tripadvisor.com/Hotel_Review-g664838-d1454154-

Reviews-Combate_Beach_Resort-

Cabo_Rojo_Puerto_Rico.html#/media/1454154/?albumid=101&type=0

&category=101

16.   La Parte Peticionaria tiene conocimiento de la existencia de barreras en el hotel

que al día de hoy interfieren con su capacidad para usar y disfrutar los bienes, servicios,

privilegios y acomodos ofrecidos en la Propiedad.

17.   El día de hoy la Parte Peticionaria se ha sentido disuadida o desalentada de visitar

la Propiedad porque tiene conocimiento de las barreras ilegales que limitan e interfieren

con su acceso a la Propiedad. La Parte Peticionaria sabe que sería fútil e inútil enfrentar

estas barreras porque enfrentarlas equivale a someterse a una situación humillante,

discriminatoria y peligrosa. Todas barreras aquí descritas están directamente

relacionadas con la discapacidad de la Parte Peticionaria e interfieren su completo y

acceso igual acceso.

18.   A base de sus observaciones personales y la información obtenida sobre el estado

de la propiedad, y a base de su experiencia como persona con limitaciones que ha visto

muchos de lugares accesibles y no accesibles a través de su vida, la Parte Peticionaria

alega afirmativamente que existen las siguientes barreras arquitectónicas en la

Propiedad relacionadas a su discapacidad:

## Acceso Desde Afuera de la Propiedad:
## Estacionamiento, Ruta de Acceso y Entrada

a)  No hay una ruta de acceso desde los estacionamientos hasta una entrada accesible. ADAAG 1991 § 4.3; ADAAG 2010 § 206.2.1. Posibles soluciones: añadir una rampa *en cumplimiento*, modificar para que la gradación de la pendiente sea 1:20; añadir una plataforma de elevación ("lifter").

b)  En cuanto a estacionamientos, no hay el número requerido de estacionamientos accesibles. ADAAG 1991 § 4.1.2; ADAAG 2010 § 208.2. Posibles soluciones: reconfigurar el estacionamiento mediante la utilización de pintura.

c)  El estacionamiento no recibe un mantenimiento adecuado para que se mantenga en "condición operable" en violación a 28 C.F.R. § 36.211(a). Por ejemplo, el mantenimiento del área de estacionamiento ha sido pobre, inconsistente y en incumplimiento con la reglamentación aplicable.

d)  En cuanto a estacionamientos, no se cumple el requisito de que al menos un estacionamiento que cumpla con las especificaciones técnicas y dimensiones de la categoría "van".[3] ADAAG 1991 § 4.1.2 (b); ADAAG 2010 § 208.2. Tampoco se cumple con el requisito de que una sexta parte de los estacionamientos accesibles tengan las dimensiones de categoría "van". Id. Posibles soluciones: reconfigurar el estacionamiento mediante la utilización de pintura.

e)  La configuración y dimensiones de los estacionamientos es sustancialmente inconsistente con lo requisitos de reglamentación aplicable. ADAAG 2010 § 502.2, 502.3. Posibles soluciones: reconfigurar el estacionamiento mediante la utilización de pintura.

f)  La configuración y dimensiones de los espacios adyacentes a los estacionamientos es sustancialmente inconsistente con los requisitos de la reglamentación aplicable. ADAAG 2010 § 502.2, 502.3., 503.3.3. Posibles

---

[3] La ADAAG ni la legislación estatal requiere que una persona con discapacidades tenga una van o camioneta para estacionarse en dichos estacionamientos clasificados por la ADAAG como "Van". Tiene que haber, y se tiene derecho a utilizar, todos los estacionamientos accesibles que requiere la ADAAG.

soluciones: reconfigurar el estacionamiento mediante la utilización de pintura.

g)　　La pendiente en los estacionamientos y los espacios adyacentes a los estacionamientos es inconsistente con los requisitos de la reglamentación aplicable, pues su inclinación es mayor a 1:48 en todas las direcciones. ADAAG 2010 § 502.4. Posibles soluciones: nivelar las superficies; reubicar estacionamientos en cumplimiento con las guías para ubicación de estacionamientos accesibles.

h)　　Los espacios adyacentes a los estacionamientos no conectan con una ruta accesible. ADAAG 2010 § 502.3. Posibles soluciones: reconfigurar los estacionamientos de forma tal que el pasillo accesible (access aisle) conecte con la ruta accesible.

i)　　Los estacionamientos no están identificados con el símbolo internacional de accesibilidad de la manera que lo requiere la reglamentación. ADAAG 2010 § 502.3. Posibles soluciones: colocar toda la rotulación reglamentaria en todos los estacionamientos accesibles. La rotulación debe ser a la altura y en la posición requerida por la reglamentación.

j)　　El posicionamiento de la rotulación de los estacionamientos es sustancialmente inconsistente con la reglamentación aplicable. ADAAG 2010 § 502.6. Posibles soluciones: colocar rotulación a la altura y en la posición requerida por la reglamentación.

k)　　Ningún estacionamiento tiene la rotulación de "van" requerida por la reglamentación aplicable. ADAAG 2010 § 502.6. Posibles soluciones: colocar la rotulación en todos los estacionamientos accesibles y a la altura y en la posición requerida por la reglamentación.

l)　　Los estacionamientos accesibles no están ubicados en la ruta accesible más cercana a la entrada accesible. ADAAG 2010 § 502.6. Posible solución: reconfigurar los estacionamientos.

m)　　La ruta de acceso hacia la entrada accesible desde los estacionamientos no es

8

firme, estable y tiende a ser resbalosa. ADAAG 2010 § 302.1. Posibles soluciones: reparar pavimentación desnivelada, reparar protuberancias y hoyos; remplazar la superficie existente con asfalto u otro material.

n) En la ruta de acceso hacia la entrada accesible hay rampas cuya pendiente es muy inclinada de manera sustancialmente inconsistente con la reglamentación aplicable. ADAAG 1991 §§ 4.8.1, 4.8.2; ADAAG 2010 §§ 403.3 ("cross slope" y "running slope"). Posible solución: reconfigurar para que la pendiente sea 1:20.

o) En la ruta de acceso hay rampas en aceras ("curb ramps") cuya configuración y dimensiones son sustancialmente inconsistentes con los requisitos de la reglamentación aplicable. ADAAG 1991 §§ 4.7.1, 4.7.2, 4.7.2.3, 4.7.4, 4.7.5, 4.7.6, 4.7.9, 4.7.10; ADAAG 2010 §§ 402.2, 406.1, 405.2, 406.1, 405.3, 405.5, 406.4, 406.3). Posibles soluciones: modificar la rampa para ajustarla a los requisitos de la reglamentación.

p) En cuanto a la **ruta de acceso,** en la ruta desde su comienzo en los estacionamientos hasta la entrada accesible hay partes cuya inclinación es mayor a 1:20 (lo que equivale que esa inclinación se considere una rampa para fines de la ADAAG), pero la configuración física existente no cumple con los requisitos aplicables a las **rampas** de manera sustancialmente inconsistente con la reglamentación aplicable. ADAAG 1991 §§ 4.7.1, 4.7.2, 4.7.2.3, 4.7.4, 4.7.5, 4.7.6, 4.7.9, 4.7.10; ADAAG 2010 § 405.5 (ancho de la rampa) 405.4 (superficie de rampa no es estable), 405.2 (inclinación de la rampa), 405.7.2, 405.7.3 (aterrizaje o "landing" de la rampa), 405.7.4 (espacio 60" x 60" en el giro), 405.7.4 (pásanos requerido en rampa cuya elevación es más de 6"), 505.4 (altura del pasamanos de la rampa), 505.6 (obstrucciones en el tope del pasamanos de la rampa); 505.7.1 (diámetro del pasamano circular no es ente 1 1/4" y 2"), 505.7.1 (pasamanos no-circular no tiene un perímetro de entre 4" y 6 1/4"), 505.10.1 (pasamanos no se extiende 12" más allá del nivel de abajo y arriba de la rampa). Posibles soluciones: alterar el pasamano, remplazar el pasamano,

reconfigurar el pasamano, ajustar la altura del pasamanos, instalar pasamanos, aumentar espacio para aterrizaje o reubicar la rampa.

q) La entrada no cumple con los requisitos de la reglamentación aplicable. En cuanto a las entradas que no son accesibles, estas no tienen letreros que indiquen la ubicación de la entrada accesible. ADAAG 2010 § 216.6 Hay entradas accesibles y no accesibles, pero las entradas accesibles no tienen el símbolo internacional de impedido identificándolas. ADAAG 2010 § 216.6. Posibles soluciones: hacer todas las entradas accesibles y/o colocar la rotulación requerida por la reglamentación aplicable.

### Acceso Adentro de la Propiedad: Acceso a Bienes y Servicios

r) Hay mostradores de ventas y servicios (ejemplo: "front desk" counter en área de restaurante), pero la configuración y dimensiones son sustancialmente inconsistentes con la reglamentación aplicable. ADAAG 1991 § 7.2 ADAAG 2010 §§ 904.3.1 (requiriendo que haya una porción del mostrador que sea 36" de alto por 36" de ancho), 904.4 (requiriendo que la parte accesible del counter sea de la misma profundidad que la parte no accesible), 904.4, 904.1 (requiriendo un espacio mínimo para acercamiento paralelo u horizontal al mostrador), 306.2.2, 306.2.4, 306.3.1 (requiriendo un espacio debajo del mostrador cuando el diseño del mostrador es para acercamiento frontal). Posibles soluciones: bajar una sección del mostrador, ampliar una sección del mostrador, remplazar el mostrador, ampliar la profundidad del mostrador, reconfigurar espacios para permitir acercamiento paralelo o frontal, reconfigurar mostrador para dar el espacio requerido debajo del mostrador en casos de diseño para acercamiento frontal.

s) Hay mostradores donde se espera que la persona alcance por iniciativa propia (self-service) materiales, objetos o bienes que están disponibles para todas las personas, pero esos materiales, objetos o bienes están fuera de alcance ya que están ubicados a más de 48" del suelo y el mostrador es sustancialmente

incompatible con los requisitos de la reglamentación aplicable. ADAAG 2010 §§ 904.5.1, 308.3.1, 308.3.1, 308.3.2, 308.2.1, 904.5.1, 904.5.1, 904.5.2. Posibles soluciones: colocar los objetos en otro lugar, sustituir el mostrador o bajar la altura del mostrador.

### Acceso a Baño de la Propiedad En Áreas Comunes

t) No hay baños en las áreas comunes donde espacio provisto alrededor del inodoro sea adecuado para una persona con impedimentos. El tamaño del baño es sustancialmente inconsistente con la reglamentación aplicable. ADAAG 1991 § 4.22; ADAAG 2010 § 604.3.1, 604.8.1.1. Posibles soluciones: ampliar el baño; mover objetos para ampliar espacio).

### Las Habitaciones

u) El Parador Combate Beach opera en dos edificios como un sólo negocio. Existe un edificio principal y segundo edificio a unos 80 o 120 metros de distancia de del edificio principal. En ambos edificios hay habitaciones para los huéspedes de la Propiedad. Las habitaciones de la Propiedad están sujetos a los requisitos de ADAAG 2010 §§ 224.2, 224.4. Las habitaciones incumplen con los requerimientos de la ADAAG 2010 por las siguientes razones: La Propiedad no tiene una habitación accesible con un *roll-in shower*; y la Propiedad no tiene el mínimo de habitaciones accesibles conforme a su cabida total, es decir, no tiene cinco habitaciones accesibles.

v) Existe una habitación accesible que no cumple con los asientos requeridos por ADAAG 2010 §§ 608.4, 608.2.2, 608.5.2.

w) No existen habitaciones accesibles que cumplan con el criterio de dispersión de la ADAAG 2010 § 224.5 ("Guest rooms required to provide mobility features complying with 806.2 and guest rooms required to provide communication features complying with 806.3 shall be **dispersed** among the **various classes of guest rooms**, and shall provide choices of types of guest rooms, number of beds, and other amenities comparable to the choices provided to other guests. Where

the minimum number of guest rooms required to comply with 806 is not sufficient to allow for complete dispersion, guest rooms shall be dispersed in the following priority: **guest room type**, number of beds, and amenities. At least one guest room required to provide mobility features complying with 806.2 shall also provide communication features complying with 806.3. Not more than 10 percent of guest rooms required to provide mobility features complying with 806.2 shall be used to satisfy the minimum number of guest rooms required to provide communication features complying with 806.3."). Según el sitio web oficial de la Propiedad, https://combatebeach.com/all-rooms/ el hotel provee las siguientes categorías de habitaciones, las cuales se identifican y describen a continuación según aparecen en el referido sitio web al 10 de diciembre de 2020:

i. SINGLE ROOM (1 QUEEN BED) $109-149 / night. 1-2 guests. Air Conditioning, Flat-screen TV with Satellite Programming, Small Refrigerator. Designed in a tasteful Mediterranean style, this guest room offers all the comforts of home in a spacious and well-appointed setting. Relax with the latest in entertainment on a 32" flat-screen TV w/ satellite. Sleep well in a soft queen-size bed. Store some cold drinks or a snack in your in-room refrigerator. Situated on the first or second floor at the Main Complex or La Hacienda (separate building, 100 meters from Main Complex), these rooms make comfortable accommodations for any traveler.

ii. KING DELUXE (1 KING BED). $134-174 / night. 1-2 guests. Air Conditioning, Flat-screen TV with Satellite Programming, Small Refrigerator. For the traveler seeking a little added comfort, this spacious room is the perfect haven for enjoying a refreshing sleep after an exhilarating or relaxing day. Sleep well in a luxurious king-size bed, or flip on your 43" LED TV and enjoy the latest satellite entertainment. Located on the second floor of the Main Complex,

12

you're sure to enjoy a refreshing stay in these large, luxurious rooms.

iii.  KING DELUXE BALCONY (1 KING BED) $139-179 / night 1-2 guests Air Conditioning, Flat-screen TV with Satellite Programming, Small Refrigerator, Balcony If you are looking for the ultimate comfort, this spacious room is the perfect haven for enjoying a refreshing sleep after an exhilarating or relaxing day. Sleep well in a luxurious king-size bed, flip on your 43" LED TV and enjoy the latest satellite entertainment or step out to take the breeze on your own semi-private balcony. Located on the second floor of the Main Complex, you're sure to enjoy a refreshing stay in these large, luxurious room.

iv.  HONEYMOON SUITE (1 KING BED) $189-239 / night 1-2 guests Air Conditioning, 2 Flat-screen TVs with Satellite Programming, Refrigerator, Fully equipped Kitchen, Microwave, Coffeemaker, Sink The perfect spot for a relaxing and romantic getaway, our Honeymoon Suite offers a spacious, multi-room interior surrounded by two private balconies. Plenty of space, amenities and views to inspire a memorable honeymoon, you'll enjoy a full-size kitchen, including microwave, stove, coffeemaker & refrigerator. Along with two 32" LED TVs with satellite programming, there's plenty of amenities for every part of the day – from sunrise to sunset.

v.  FAMILY SUITE @ LA HACIENDA (1 QUEEN BED AND 1 BUNK BED OR SOFA BED) $169-219 / night 2 adults & 2 children <14 years Air Conditioning, Flat-screen TV with Satellite Programming, Small Refrigerator, Microwave, Sink Step into this spacious offering and enjoy all the comforts of home – from

13

satellite television on flat-screen TVs to a full living room and small kitchenette, you'll have everything on-hand for your next family holiday at Combate Beach Resort. Accommodations include a luxurious queen-size bed, and full-size futon, perfect for the whole family. All Family Suites are located in La Hacienda (separate building, 100 meters from Main Complex).

vi. FAMILY SUITE @ LA HACIENDA (1 QUEEN BED AND 1 BUNK BED OR SOFA BED) $169-219 / night 2 adults & 2 children <14 years Air Conditioning, Flat-screen TV with Satellite Programming, Small Refrigerator, Microwave, Sink Step into this spacious offering and enjoy all the comforts of home – from satellite television on flat-screen TVs to a full living room and small kitchenette, you'll have everything on-hand for your next family holiday at Combate Beach Resort. Accommodations include a luxurious queen-size bed, and full-size futon, perfect for the whole family. All Family Suites are located in La Hacienda (separate building, 100 meters from Main Complex).F

vii. FAMILY STUDIO (1 QUEEN BED AND 1 BUNK BED) $169-219 / night 2 adults & 2 children <14 years Air Conditioning, Flat-screen TV with Satellite Programming, Refrigerator, Fully equipped Kitchen, Microwave, Sink Specially designed for long family stays, our Family Studio accommodates up to 2 adults and 2 children under 14 years old. Complete with a fully equipped kitchen, 32" LED TV with satellite programming, air conditioning, microwave & refrigerator, has all the amenities needed for a comfortable stay with the family. The Family Studio is located on the first floor of our Main Complex.

viii. ECOSUITE (2 FULL BEDS) $115-200 / night 1-4 guests Eco-

14

friendly Room, Air Conditioning, Flat-screen TV with Satellite Programming, Small Refrigerator, Microwave Sleep easy with the knowledge that our hotel boasts investments of over $500,000 in eco-amicable process and technologies, designed to minimize environmental impacts. These EcoSuites accomodate from 2 and upto 4 guests. Energy Star appliances, local furniture and plenty of eco-friendly practices make these suites the perfect choice for the environmentally-conscious traveler. And with a 32" LED TV with satellite programming, air conditioning, microwave & small refrigerator, there's everything you need for a relaxing stay – no comforts have been sacrificed in designing our eco-friendly suites. All EcoSuites are located in the second floor of our Main Complex.

ix. DOUBLE ROOM (2 QUEEN BEDS) $149-189 / night 1-4 guests Air Conditioning, Flat-screen TV with Satellite Programming, Small Refrigerator Spend a night in comfort in this spacious room. Sleep well on luxurious queen-size beds, the perfect accommodations to rest your head after a busy day of relaxing in the sun. With air conditioning, satellite TV and a small refrigerator, all the comforts of home are on-hand when you book our comfy Double Room. All Double Rooms are located in the first floor of our Main Complex.

x. JUNIOR SUITE (2 QUEEN BEDS) $169-219 / night 1-4 guests Air Conditioning, Flat-screen TV with Satellite Programming, Small Refrigerator, Microwave, Sink Spacious, inviting accommodations – welcome to our Junior Suite, perfect for groups and families of up to four. Sleep easy in luxurious queen-size beds, offering the latest in comfort. Enjoy a wet bar, equipped with microwave, sink & small refrigerator – perfect for whipping up a

15

snack or quick meal. Or relax and enjoy the latest in entertainment with 32" LED TVs w/ satellite programming. This comfortable Junior Suite is located on the first floor of our Main Complex.

xi.   TURPIAL SUITE (2 QUEEN BEDS) $203-253 / night 1-4 guests Air Conditioning, 2 Flat-screen TVs with Satellite Programming, Small Refrigerator, Microwave, Sink, Private Balcony overlooking the Pool Rest and relax in comfort – after a busy day, there's no better way to unwind than in our luxurious Turpial Suite. Complete with living room, wet bar with microwave, sink and a small fridge, and the only suite in our hotel with a whirlpool in the bathroom, there's everything you need for a fully-serviced vacation here. And if you're craving entertainment, enjoy two 42" LED TVs with satellite programming – perfect for a movie night or catching up with the latest news. It's all up to you in this roomy suite located in the second floor of our Main Complex, overlooking the pool.

xii.   TRIPLE ROOM (1 QUEEN BED & 2 FULL BEDS) $199-239 / night 1-6 guests Air Conditioning, Flat-screen TV with Satellite Programming, Small Refrigerator For larger groups and big families, there's no better option than our Triple Room. Complete with one luxurious queen-size bed and two full-size beds, you'll find all the comforts of home here – including flat-screen TVs with satellite programming, air conditioning and a small refrigerator. Conveniently located on the first floor of the Main Complex, get it all in our Triple Room.

xiii.   Bathroom times 1Bathroom x 1 — Non-smoking. This accessible and spacious suite allows you to enjoy all the comforts of home – from satellite television on flat-screen TVs to a full living room and small kitchenette. Rest assured that you'll have everything on-hand

16

for your next family holiday at Combate Beach Resort. Accommodations include a luxurious queen-size bed, and full-size futon, perfect for the whole family. Our Handicapped Suite is located in La Hacienda (separate building, 100 meters from Main Complex). Room configuration Sofa bed times 1 | Queen bed times 1Sofa bed x 1 | Queen bed x 1. (Una habitación). El baño de esta habitación es muy pequeño y sustancialmente inconsistente con la reglamentación aplicable. ADAAG 1991 § 4.22; ADAAG 2010 § 604.3.1, 604.8.1.1. Posibles soluciones: ampliar el baño; mover objetos para ampliar espacio).

19. Las barreras identificadas en el párrafo anterior son solo aquellas que la Parte Peticionaria entiende que existen basado en su experiencia y sentido común, no a base de pruebas científicas o periciales. La totalidad de las barreras existentes en la Propiedad, incluyendo las encontradas y otras no descubiertas al momento, son la causa del daño legal de la Parte Peticionaria, es decir, la falta de acceso completo, libre y espontaneo a la Propiedad. Por esto, es la intención de la Parte Peticionaria utilizar los mecanismos de descubrimiento de prueba para buscar, identificar y señalar todas aquellas barreras arquitectónicas relacionadas con la discapacidad de la Parte Peticionaria para que el acceso a la Propiedad sea completo e igualitario. Luego de identificadas las barreras, la Parte Peticionaria se propone solicitar al tribunal enmendar las alegaciones para conformar las mismas a la prueba descubierta sobre violaciones a la ADAAG ahora desconocidas.

20. La Parte Peticionaria se ha visto desalentada, y al presente se siente desalentada, de visitar la Propiedad porque la Parte Peticionaria sabe que los bienes, servicios, acomodos, privilegios, ventajas y facilidades de la Propiedad no puede ser accedidas sin que la Parte Peticionaria se someta al discrimen. La Parte Peticionaria conoce los bienes y servicios ofrecidos en la Propiedad, y regresará a la Propiedad una vez que se eliminan las barreras.

21.     Los peticionados sabían, o debían saber, que la Propiedad era y es inaccesible, sobre todo cuando se le comunicó de manera extrajudicial en varias ocasiones; que las condiciones la Propiedad violan la ley federal e interfieren (o niegan) el acceso a los discapacitados. Además, los peticionados tienen los recursos financieros para eliminar estas barreras de la Propiedad (sin mucha dificultad o gasto), y hacer que la Propiedad sea accesible para la Parte Peticionaria. Hasta la fecha, sin embargo, la Parte Peticionada se niega a eliminar esas barreras.

22.     La Parte Peticionada ha poseído y disfrutado de suficiente control y autoridad para modificar la Propiedad para eliminar barreras y cumplir con la reglamentación federal aplicable. La Parte Peticionada no ha eliminado tales barreras y no ha modificado la Propiedad para cumplir con los estándares de accesibilidad aplicables. La Parte Peticionada, de manera intencional, ha mantenido la Propiedad en su estado actual y se ha abstenido intencionalmente de alterar la Propiedad para que cumpla con los estándares de accesibilidad.

23.     La Parte Peticionaria alega afirmativamente que la presencia continua de barreras en la Propiedad es tan obvia y abierta que establece la intención discriminatoria de la Parte Peticionada. La naturaleza de las desviaciones a los estándares federales no sugiere incumplimiento con la reglamentación debido a mera negligencia o un error humano. El incumplimiento existente es tan sustancial que es obvio para un observador casual de inteligencia promedio que no tiene pericia en los estándares de diseño accesible o que no tiene experiencia con barreras arquitectónicas por no tener una discapacidad. Es a base de esto que la Parte Peticionaria cree, y por tanto alega afirmativamente, que la intención discriminatoria incluye la negativa consciente y ponderada de no adherirse a normas de construcción relevantes; el menosprecio hacia los planos de construcción y permisos emitidos para la Propiedad; la decisión concienzuda de mantener el diseño arquitectónico (tal como existe actualmente) en la Propiedad; la decisión de no eliminar las barreras arquitectónicas mantenerla en estado de incumplimiento motivado por fines de lucro. Se alega afirmativamente que la Parte

Peticionada ha querido mantener una competencia desleal con sus competidores al no invertir dinero en cumplir con el mandato federal a pesar de que sus competidores si tienen que invertir en cumplimiento, lo que afecta a otros actores económicos. Las barreras arquitectónicas en la Propiedad no son interrupciones aisladas (o temporales) de acceso por mantenimiento o reparaciones.

24.     Basado en el incumplimiento histórico de la Parte Peticionada con la ADAAG, la Parte Peticionaria cree, y por lo tanto alega, que la Parte Peticionada no tiene políticas, procedimientos o documentos internos en relación a esfuerzos de cumplimiento de ADA en la Propiedad.

## CAUSA DE ACCIÓN
### American with Disabilities Act de 1990

25.     La Parte Peticionaria incorpora las alegaciones contenidas en los párrafos anteriores.

26.     El Título III de la ley ADA dispone esencialmente que ningún individuo será tratado de manera desigual por razón de discapacidad en el pleno y equitativo disfrute (o uso) de bienes, servicios, instalaciones, privilegios y acomodos ofrecidos por cualquier persona ya sea titular, arrendador, arrendatario u operador de un lugar de acomodo público. 42 U.S.C. § 12182 (a).

27.     La Parte Peticionada discriminó contra la Parte Peticionaria al negarle un disfrute y acceso pleno e igual a los bienes, servicios, privilegios y acomodos de la Propiedad durante cada visita y cada ocasión en que la Parte Peticionaria decidió no visitar el lugar.

28.     La ley ADA establece diferentes estándares dependiendo de cuándo se construyó la estructura física y si la instalación ha sido alterada desde el 26 de enero de 1992. 28 CFR §§ 36.401, 36.402. Las propiedades "existentes" antes del 26 de enero de 1992 tienen que  eliminar las barreras de acceso de las personas con discapacidades cuando la eliminación sea "fácilmente alcanzable". 42 U.S.C. § 12182 (b) (2) (A) (iv); 28 CFR § 36.304. Estructuras diseñadas y construidas para ser ocupadas por primera vez después del 26 de enero de 1993 deben ser accesibles para personas con discapacidades

a menos que la entidad pueda demostrar que es "estructuralmente poco práctico". 42 USC § 12183 (a). Finalmente, las alteraciones posteriores al 26 de enero, 1992 debe hacerse para garantizar que, en la "máxima extensión posible", las porciones alteradas de las instalaciones sean accesibles. 28 CFR § 36.402 (a) (1).

29.    Los estándares de diseño, ADAAG, se publicaron por primera vez en 1991 y están codificados en 28 CFR Parte 36, Apéndice A ("ADAAG de 1991"). Los más recientes estándares de diseño ADA fueron publicado por primera vez en 2010 y se codificaron en 28 CFR Parte 36, Subparte D (La ADAAG de 2010). Ambas normas están disponibles en www.ada.gov.  Todas las construcciones nuevas y modificaciones comenzadas el 15 de marzo de 2012 o después deben cumplir con la ADAAG de 2010.

30.    La Parte Peticionaria cree que la Propiedad fue diseñada para ser ocupada por primera vez después del 26 de enero de 1993. Ver 28 CFR § 36.401.

31.    La Parte Peticionaria cree que la Propiedad está ubicada en un lugar que fue construído después del 26 de enero de 1993. Ver 28 CFR § 36.401.

32.    La Parte Peticionaria cree que la Propiedad fue "alterada" luego del 26 de enero de 1993. El término "alterada" o "alteraciones" incluye, pero no se limita a, remodelación, renovación, rehabilitación, restauración histórica, cambios o reordenamiento en partes o elementos estructurales, cambios o reordenamiento en la configuración de paredes y cambios en los mostradores, mesas u objetos dentro de la Propiedad.

33.    En la alternativa, si la Propiedad no fue diseñada y construída para ser ocupada por primera vez después de 26 de enero de 1993, la Propiedad es una instalación existente en cuyo caso hay una obligación de eliminar barreras arquitectónicas que afectan a las personas con discapacidad en  la medida que la eliminación sea "fácilmente alcanzable". 42 USC § 12182 (b) (2). La ley ADA establece que, al evaluar si la eliminación de barreras es "fácilmente alcanzable ", los factores a considerar incluyen los" recursos "de la instalación, 42 USC § 12181 (9) (b), que incluye "los recursos financieros generales de cualquier empresa matriz o entidad ", 28 CFR § 36.104. Si la

Parte Peticionada sostiene que no tiene los recursos financieros a modo de defensa afirmativa para excusar su incumplimiento, la Parte Peticionaria no acepta dichos pretextos y se propone utilizar los mecanismos de descubrimiento de prueba conforme a 28 C.F.R. § 36.104.

## NO ELIMINAR LAS BARRERAS EN UNA INSTALACIÓN EXISTENTE

34.    La ADA prohíbe específicamente no eliminar las barreras arquitectónicas en instalaciones existentes cuando tal eliminación es fácilmente alcanzable. 42 USC § 12182 (b) (2) (A) (iv); 28 C.F.R. § 36.104.

35.    Cuando una entidad puede demostrar que la eliminación de una barrera no se puede lograr fácilmente, esa entidad tiene que procurar que los bienes, servicios, privilegios y acomodos se hagan disponibles mediante mecanismos alternos, si estos métodos son fácilmente alcanzables.  § 12182 (b) (2) (A) (v).

36.    Aquí, la parte Peticionaria alega que la Parte Peticionada puede eliminar fácilmente las barreras arquitectónicas en la Propiedad sin mucha dificultad o gasto, y que la Parte Peticionada viola la ley ADA al no eliminar esas barreras, cuando fácilmente podía y puede hacerlo.

37.    En la alternativa, si no es "fácilmente alcanzable" para la Parte Peticionada eliminar las barreras arquitectónicas, la Parte Peticionada violó la ADA al no hacer disponibles sus servicios a través de métodos alternativos que fuesen fácilmente alcanzables.

## NO DISEÑAR Y CONSTRUIR
## UNA INSTALACIÓN ACCESIBLE

38.    La Propiedad fue diseñada y construída (o ambos) después del 26 de enero de 1992 - activando los requisitos de acceso bajo el Título III de la ADA y la reglamentación promulgada por el Departamento de Justicia de los Estados Unidos.

39.    La Parte Peticionada violó la ley ADA al diseñar y construir (o ambos) la Propiedad en una manera que no era fácilmente accesible para el público con discapacidad física, incluída la Parte Peticionaria, cuando hacerlo era estructuralmente

práctico.

## NO HACER ACCESIBLE UNA INSTALACIÓN ALTERADA

40.   La Parte Peticionaria cree, y por tanto alega afirmativamente, que la Propiedad

ha sido alterada (según el término "alteración" es definido por §§ 202.1, §202.3, 202.4)

después del 26 de enero de 1992.  28 CFR §36.403; 49 CFR §37.43.

41.   La ADA también requiere que las instalaciones se alteren de forma tal que sea

fácilmente accesible para las personas con discapacidad en la medida máxima posible.

42 U.S.C. § 12183 (a) (2).

42.   La Parte Peticionada alteró la Propiedad de una manera que violó la ADA y que

la hizo no fácilmente accesible al público con discapacidad física, incluyendo a la Parte

Peticionaria.

## POLÍTICAS Y PROCEDIMIENTOS

43.   La ley ADA también requiere hacer modificaciones razonables en las políticas,

prácticas o procedimientos, cuando es necesario para dar igual acceso a los servicios,

bienes, privilegios o acomodos a las personas con discapacidades, a menos que la

entidad pueda demostrar que hacer tales modificaciones alterarían fundamentalmente

su naturaleza. 42 USC § 12182 (b) (2) (A) (ii).

44.   Aquí, la Parte Peticionada violó la ley ADA al no hacer modificaciones

razonables en sus políticas, prácticas o procedimientos en la Propiedad, cuando estas

modificaciones son necesarias para permitir (sin alterar fundamentalmente la naturaleza

del lugar de acomodo público) el igual acceso a los bienes, servicios, instalaciones, o

acomodos.

45.   La Parte Peticionaria busca todo remedio disponible bajo la ADA (es decir,

interdicto permanente, honorarios de abogados, costos y gastos legales) por estas

violaciones mencionadas. 42 USC § 12205.

46.   La Parte Peticionada alega que la falta de eliminación de barreras ha sido a

sabiendas, voluntaria e intencional porque:

   i.   Las barreras descritas aquí son claramente visibles y tienden a ser obvias

incluso a un observador casual;

ii. La Parte Peticionada jamás ha reconocido que el cumplimiento de ADA no es un esfuerzo de una sola vez, sino una obligación *continua*. Se han negado a eliminar barreras o crear alternativas para dar acceso;

iii. La Parte Peticionada es titular, arrendador, arrendatario y/o operador de la Propiedad, y como tal tiene control sobre las condiciones de la misma día a día. La Parte Peticionada ha tenido los medios y la capacidad financiera de hacer la remediación necesaria de las barreras de acceso, pero eso nunca le ha interesado.

iv. Los lugares de acomodo público tienen la obligación de ser accesibles. Existe una consecuencia si no lo hacen: se puede ser objeto de un procedimiento civil, ya sea iniciado por el gobierno federal, estatal o una persona privada. La Parte Peticionada decidió no ser proactiva y para proporcionar acceso por iniciativa propia. La Parte Peticionada asumió una actitud que se puede describir como "vamos a esperar, no hagamos nada, resolvemos si pasa algo". La ley ADA se firmó el 26 de julio de 1990 por el entonces presidente George H.W. Bush luego de que fuese aprobada mediante consenso bipartita. La Parte Peticionada no tiene excusas para haber evadido sus obligaciones legales, y tampoco el desconocimiento de la ley excusa sus consecuencias y cumplimiento.

v. La Parte Peticionada ignora las experiencias de las personas con discapacidades que no pueden comprar, realizar transacciones comerciales personales, visitar al médico o recrearse como la mayoría de las personas. Son muchos los lugares en todo Puerto Rico, como en la Propiedad de la Parte Peticionada, donde se han ignorado los requisitos razonables de la ley ADA. La ley ADA tiene la capacidad de hacer la diferencia entre la participación y la exclusión diaria.

vi. La Parte Peticionada también ignora sus propias experiencias en otros

lugares de acomodo público. Esto es, la Parte Peticionada ha visto que en otros lugares existen estacionamientos accesibles, baños accesibles, mostradores accesibles y muchos elementos más en cumplimiento, por lo que tenía y tiene conocimiento de cuales son los accesos que se deben dar a las personas con discapacidades.

vii.   La Parte Peticionada sabe que los permisos administrativos estatales y municipales no equivalen a cumplimiento con las leyes de accesibilidad aplicables. La Parte Peticionaria cree, y por tanto alguna, que algunos de los permisos municipales y estatales que tiene la Parte Peticionada para operar su lugar de acomodo público señalan expresamente que el permiso para operar el negocio no equivale a una certificación de cumplimiento con la ley ADA.

viii.   Se cree, y por tanto se alega, que existen certificaciones de arquitectos, ingenieros, contratistas, gestores y empleados de gobierno donde se certificó de manera contraria a la realidad (potencialmente fraudulenta, sujeto a investigación y descubrimiento de prueba) que la propiedad cumplía con la reglamentación de la ley ADA con el propósito de diseñar, construir, alterar u operar la Propiedad en controversia en violación a la reglamentación federal. La Parte Peticionada no puede ampararse en actos impropios suyos o de terceros para justificar la operación continua de un lugar de acomodo público que viola la reglamentación federal aplicable.

ix.   La Parte Peticionada no tiene obligación de dar una notificación por escrito de la falta de accesibilidad. Ninguna otra ley de derechos civiles permite que los comercios y lugares de acomodo público discriminen sin consecuencia hasta que las víctimas de la discriminación notifiquen al negocio que se ha violado la ley.  Si fuese un requisito dar "notificación" a la persona que viola derechos civiles, los lugares de acomódo público no serían proactivos en la eliminación de las barreras arquitectónicas. En

24

su lugar, muchos asumirían una actitud de "mejor espero y resuelvo si alguien dice y prueba que me dio aviso de lo que es obvio que está mal". La ADA no coloca el peso de actuar en las personas con discapacidades que la ley busca proteger; el deber de ser proactivo lo tiene el lugar de acomodo público. Si fuese un requisito dar avisos al establecimiento, el costo de dar el aviso y probar que se dio el aviso va a recaer sobre la persona con discapacidades, quienes usualmente ya tienen capacidad financiera limitada. Por ejemplo, un aviso escrito por un lego probablemente resulte en una litigación extensiva y controversia de hecho sobre si ese aviso realmente se entregó a una persona con autoridad (como si fuese un emplazamiento), si se envió por correo a la dirección correcta (en un contexto donde muchos comercios operan de manera informal y sin direcciones postales) o controversias sobre si realmente se envió el escrito (forzando al discapacitado a asumir el costo de envío de cartas por correo certificado) o controversias interminables sobre si el aviso fue suficiente, especifico o completo. Los discapacitados encuentran múltiples barreras diariamente o no van a lugares porque saben que no son accesibles (contrario a una persona que no sufre accidentes de transito todos los días), de modo que los discapacitados, bajo el enfoque de dar "avisos" tendrían que invertir mucho dinero en enviar carta por correo certificado o entregar a la mano a persona con autoridad estos avisos. Requerir avisos evitaría que el tribunal se concentre en la sustancia del mandato federal, accesibilidad, y pondría escollos procesales al ejercicio de los derechos.

x.  La Parte Peticionada ha hecho expresiones públicas rechazando la legitimidad de los reclamos bajo el Titulo III de la Americans with Disabilities Act y ha aplaudido a comercios que sostienen, sin base legal, que este tipo de reclamaciones son frívolas. Compárese, Suarez-Torres v.

Bebo's BBQ et al, Caso Núm. 16-1924 (CCC), donde la Juez federal Carmen Consuelo Cerezo impuso una sanción de $2,350.00 al restaurante. "Frivolidad" es un concepto legal que significa sin base legal o en hechos. La base legal existe, que es la Americans with Disabilities Act. La acción se sostiene en hechos porque la Parte Peticionaria tiene un *disability* y porque las barreras arquitectónicas en la Propiedad son reales. Todas las causas de acción que permiten el ejercicio de los derechos civiles proveen remedios tan o más robustos que la Americans with Disabilities Act.

xi.   Establecer y administrar un negocio requiere cumplimiento de muchas leyes y normas. Ese es el costo de hacer negocios. Quien decide operar un lugar de acomodo publico, tiene que cumplir con las leyes aplicables desde el día uno. Actúa de manera a sus propios actos quien decide operar un lugar de acomodo público que desde el día uno excluye o limita el acceso a las personas con discapacidades. Es impensable que se busque retrasar (mediante requerir "avisos") o eliminen las consecuencias para las pequeñas o grandes empresas que no paguen impuestos o no cumplan con los códigos de salubridad y seguridad. Violar los derechos de las personas con discapacidad no debe tratarse de manera diferente. También es inaceptable que se requiera cumplimiento a las "grandes" empresas y no a las medianas o pequeñas (o viceversa) o que se requiera cumplimiento dependiente del lugar de incorporación de la compañía o dependiendo del originen nacional o raza de los dueños o accionista de la compañía o empresa.

xii.   Hay grandes esfuerzos federales para educar a los dueños de negocios sobre sus obligaciones de la ADA, incluido el sitio web detallado del Departamento de Justicia de los Estados Unidos sobre cumplimiento con ADA (ada.gov), la línea directa del Departamento de Justicia, materiales de asistencia técnica extensa del Departamento de Justicia y los diez

26

centros regionales ADA financiados por el gobierno federal que proporcionan recursos a profundidad y capacitación en todos los estados ( adata.org ). Sin embargo, la Parte Peticionada no ha hecho ningún esfuerzo significativo y proactivo para cumplir con la ADA.

xiii. A base del incumplimiento histórico y nivel de incumplimiento, se cree que la Parte Peticionada jamás ha reconocido que los estándares de accesibilidad de ADA son extremadamente importantes. No son detalles menores o reglas exigentes, sino más bien, son esenciales para garantizar la verdadera accesibilidad. Una puerta que es demasiado estrecha puede ser la diferencia entre acceder a un negocio o no. Un baño con un espacio muy pequeño puede hacer la diferencia entre usar o no un baño. Dicho esto, es importante señalar que para imponer responsabilidad bajo la ley ADA, la barrera no necesita excluir completamente a la Parte Peticionaria de entrar o usar la instalación; solo necesita *interferir* con el disfrute pleno e igual de la Parte Peticionaria. La ADAAG establece estándares técnicos requeridos para que haya un "disfrute pleno e igualitario". Por eso, si una barrera viola el ADAAG y dicha barrera se relaciona con la discapacidad de la Parte Peticionaria, el igual y completo acceso se ve menoscabado, lo que constituye discriminación bajo la ADA.

xiv. Se sabe que las personas con discapacidad experimentan una pérdida de dignidad, independencia, personalidad y orgullo asociados con la segregación y la falta de acceso a alojamientos públicos. Beyond the Price Tag: An Economic Analysis of Title III of the Americans with Disabilities Act, 20 Kan. J. L. & Pub. Pol'y 58, 76, 85 (Fall 2010). Las barreras de acceso y la segregación crea estigma social y socava los sentimientos de autoestima e independencia de las personas con discapacidad. Stacey Menzel Baker, Jonna Holland and Carol Kaufman- Scarborough, How Consumers with Disabilities Perceive "Welcome" in Retail

Servicescapes: A Critical Incident Study, 23 J. of Serv. Marketing 160, 167-168 (2007).   Las barreras también causan que las personas con discapacidad tengan una reacción general negativa a todo el entorno minorista, y experimentar miedo e incomodidad en ese ambiente. Carol Kaufman-Scarborough,   Reasonable   Access   for   Mobility-Disabled Persons is More Than Widening the Door, 75 J. of Retailing 479, 483, 494 (1999). Véase además, The Routledge Handbook of Designing Public Spaces for Young People: Processes, Practices and Policies for Youth Inclusion (2020) (discutiendo el concepto de acceso a una experiencia sustancialmente similar, más allá del acceso físico, desde una perspectiva científica); Moreno Llopis, Beatriz. La arquitectura al servicio de la discapacidad funcional. Diss. 2020; Cruz, Vanessa Vianna, et al. "Accessibility barriers for people with disabilities or reduced mobility: an integrative review." Research, Society and Development 9.4 (2020): 168943053; Carol Kaufman-Scarborough and Stacey Menzel Baker, Do People with Disabilities Believe the ADA Has Served Their Consumer Interests?, 39 J. of Consumer Aff. 1, 24 (Summer 2005); Baker, Stacey Menzel,   Jonna   Holland,   and   Carol   Kaufman-Scarborough.   How consumers with disabilities perceive "welcome" in retail servicescapes: a critical incident study. Journal of Services Marketing (2007); Realm, Public. Experiential Accessibility. La inaccesibilidad en la web también constituye también unos de los grandes retos modernos.  Cohen, Alex H., Jorge E. Fresneda, and Rolph E. Anderson. What Retailers Need To Understand About Website Inaccessibility And Disabled Consumers: Challenges And Opportunities. Journal of Consumer Affairs.

xv.   La Parte Peticionaria rechaza con vehemencia argumentos de que hacer valer la ley ADA de manera privada es ilegítima. La ley debe cumplirse independientemente que el lugar de acomodo público sea una entidad

28

pequeña, mediana o grande. La Ley ADA no permite discriminar a unos sí y a otros no. La prohibición de discriminen es absoluta y aplica a todos por igual. No se hace distinción por origen social, nacional, ciudadanía o residencia legal de quien opera un lugar de acomodo público, sea una persona natural o jurídica. Cumplir con los estándares de accesibilidad física de la ADA requiere que los dueños de negocios tomen medidas proactivas y, a menudo, incurrir en costos. Desafortunadamente, en este caso, la ley ni la posibilidad de ser objeto de una acción civil (de parte del gobierno o privada) fue suficiente incentivo para que se diera un cumplimiento voluntario. La ADA no fue suficiente para convencer a la Parte Peticionada a cumplir con la ley y el objetivo de esta Petición es procurar que finalmente se cumpla el mandato de ley.

REMEDIO

**POR TODO LO CUAL**, la Parte Peticionaria muy respetuosamente solicita los siguientes remedios legales:

A. Una sentencia declaratoria disponiendo que la parte Peticionada ha violado los requisitos del Título III de la ADA y la reglamentación de implementación relevante de la ADA; y que la Propiedad no es completamente accesible y utilizable de manera independiente para personas con movilidad limitada como la Parte Peticionaria;

B. Un interdicto permanente de conformidad con 42 USC § 12188 (a) (2) y 28 CFR § 36.504 (a) que ordene a la Parte Peticionada a que tome todos los pasos necesarios para eliminar las barreras arquitectónicas descritas anteriormente y para que sus instalaciones cumplan con los requisitos establecidos en la ADA y sus reglamentos de implementación, para que sus instalaciones sean totalmente accesibles a, y de forma independiente, por personas con movilidad limitada, y que además ordene que el tribunal retendrá jurisdicción por un período para supervisar que la Parte Peticionada cumpla con los requisitos relevantes de la

ADA y para asegurarse de que la Parte Peticionada haya adoptado y siga una política institucional que de hecho haga que la Parte Peticionada permanezca totalmente en cumplimiento con la ley;

C. En caso de que la Parte Peticionada continúe su condición discriminatoria, se solicita de conformidad con 42 USC § 12188 (a) (2) y 28 CFR § 36.504 que se ordene el cierre y clausura de la Propiedad como medida para detener la condición discriminatoria hasta tanto la Parte Peticionada haya acreditado de manera fehaciente a satisfacción del tribunal que se ha eliminado el discrimen;

D. Pago de los costos de la acción y gastos de litigio, de conformidad con 42 USC § 12205;

E. Pago de honorarios razonables de abogados *no* bajo las Reglas de Procedimiento Civil de Puerto Rico, sino de conformidad con lo dispuesto en 42 U.S.C. § 12205 y 28 CFR § 36,505 y su jurisprudencia vinculante interpretativa y;

F. La provisión de cualquier otro remedio que sea justo y propio.

**SOMETIDO RESPETUOSAMENTE**.

Hoy 10 de diciembre de 2020.

f/José Carlos Vélez Colón
LIC. JOSÉ CARLOS VÉLEZ COLÓN
R.U.A. NÚM.: 18913
JVELEZ@VELEZLAWGROUP.COM

421 AVE MUÑOZ RIVERA #205
SAN JUAN, PR 00918

TEL.: (787) 599-9003
FAX: N/A

Abogado de la Parte Peticionaria